**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Ienco, | No. CV-18-00734-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Michael Ienco's ("Plaintiff") appeal from the Social Security Commissioner's (the "Commissioner") denial of his application for a period of disability, disability insurance benefits, and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* (Doc. 1 at 1). This matter has been fully briefed by the parties.[1] The Court now rules on Plaintiff's appeal.

## I.    BACKGROUND

The parties are familiar with the background information in this case, and it is summarized in the Administrative Law Judge's ("ALJ") decision. (*See* Doc. 9-9 at 38–56). Accordingly, the Court will reference the background only as necessary to the analysis below.

---

[1] (*See* Docs. 10–12). Counsel for Plaintiff failed to include their State Bar numbers on both Plaintiff's Opening Brief (Doc. 10) and Reply (Doc. 12). All filings before the Court must comply with LRCiv 7.1(a)(1), which requires attorneys to include their State Bar numbers on the first page of each document. The Court strongly encourages Plaintiff's counsel to review this District's Local Rules of Practice to ensure that any future filings comply.

## II.    LEGAL STANDARD

The ALJ's decision to deny disability benefits may be overturned "only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Id.* (citations omitted); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Benton*, 331 F.3d at 1035 ("If the evidence can support either outcome, the Commissioner's decision must be upheld.").

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotations omitted).

Furthermore, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. Rather, it is a "fundamental rule

of administrative law" that a reviewing court, in dealing with a judgement which an administrative agency alone is authorized to make, may only make its decision based upon evidence discussed by the agency. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Thus, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Similarly, when challenging an ALJ's decision, "issues which are not specifically and distinctly argued and raised in a party's opening brief are waived." *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110 n. 1 (9th Cir. 2000) (en banc), *vacated and remanded on other grounds*, 535 U.S. 391 (2002)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n. 7 (9th Cir. 2009) (applying the principle to Social Security appeals). Accordingly, the Court "will not manufacture arguments for an appellant." *Arpin*, 261 F.3d at 919 (citation omitted).

## A. Definition of a Disability

A claimant can qualify for Social Security disability benefits only if he can show that, among other things, he is disabled. 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is disabled only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

## B. The Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential

process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.*

At the second step, the ALJ next considers whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment, then the claimant is not disabled. *Id.* § 404.1520(c). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine." *Id.* § 404.1521(b). Additionally, unless the claimant's impairment is expected to result in death, "it must have lasted or must be expected to last for a continuous period of at least 12 months" for the claimant to be found disabled. *Id.* § 404.1509.

Third, having found a severe impairment, the ALJ then considers the severity of the claimant's impairment. *Id.* § 404.1520(a)(4)(iii). This requires the ALJ to determine if the claimant's impairment "meets or equals" one of the impairments listed in the regulations. *Id.* If so, then the ALJ will find that the claimant is disabled. *Id.* If the claimant's impairment does not meet or equal a listed impairment, then the ALJ will assess the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record." *Id.* § 404.1520(e). In assessing the claimant's residual functional capacity ("RFC"), the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.* § 404.1545(a)(1). A claimant's RFC is the most the claimant can still do despite the effects of all the claimant's medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(1–2).

At step four, the ALJ determines whether, despite his impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To do this, the ALJ compares the claimant's residual function capacity with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform his past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Otherwise, the ALJ proceeds to the final step.

At the fifth and final step, the ALJ considers whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(g)(1). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(v). However, if the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *Id.* § 404.1520(a)(3). This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See id.* §§ 404.1527, 404.1529.

C.   **The ALJ's Evaluation under the Five Step Process**

Prior to beginning the sequential evaluation process, ALJ Waters noted that Plaintiff's case was before her on remand from the Ninth Circuit Court of Appeals. (Tr. 397).[2] Previously, on October 27, 2011, ALJ Tucevich had denied Plaintiff's application for a period of disability and disability insurance benefits alleging disability beginning December 30, 2008. (Tr. 28, 397).[3] After the Appeals Council denied review on September 28, 2012, Plaintiff requested review by the District Court, which affirmed the Commissioner's decision. (Tr. 397). Upon Plaintiff's appeal, the Ninth Circuit reversed

---

[2] Citations to "Tr." reference the certified administrative transcript of record located at Doc. 9.

[3] Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on March 29, 2010 alleging disability beginning December 30, 2008. (Tr. 19).

and remanded the District Court's decision, ordering the ALJ to reconsider Plaintiff's eligibility for disability benefits. (*Id.*); *see Ienco v. Colvin*, 627 F. App'x. 669, 670 (9th Cir. 2015). Particularly, the Ninth Circuit directed the ALJ to make findings on remand as to Plaintiff's ability to work in excess of 25 hours per week. (*Id.*).

While the claims above were pending, Plaintiff filed subsequent applications for Title II and Title XVI benefits on November 27, 2012. (Tr. 397, 521). These subsequent claims were denied initially and on reconsideration. (Tr. 397). Thereafter, Plaintiff filed a request for hearing, which was held on December 4, 2015. (*Id.*). Prior to a decision being issued, however, the Appeals Council remanded the earlier claim and directed ALJ Waters to consolidate Plaintiff's subsequent claims filed on November 27, 2012 with the remanded claims. (*Id.*). After Plaintiff appeared and testified at a hearing on March 7, 2017, ALJ Waters issued an unfavorable decision on June 6, 2017. (Tr. 397, 415).

At step one of the sequential evaluation process, ALJ Waters found that Plaintiff had not engaged in substantial gainful activity since December 30, 2008, the alleged onset date. (Tr. 400). In step two, the ALJ ascertained that Plaintiff had one severe impairment—schizoaffective disorder. (*Id.*). At this step, the ALJ also found that Plaintiff had non-severe impairments of diabetes, hyperlipidemia, a learning disability in reading, essential tremor, and hypothyroidism. (*Id.*). Under the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the impairments listed in the Social Security Regulations. (Tr. 401). Before moving on to step four, the ALJ conducted an RFC determination after consideration of the entire record. (Tr. 402). The ALJ found that Plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels[.]" (*Id.*). However, the ALJ noted the following non-exertional limitations: "The claimant can perform simple routine and repetitive work tasks involving simple work related decisions and simple instructions with few changes in the work setting." (*Id.*). The ALJ also determined that the "record does not support a finding of an inability to perform all work-related activity on a full time basis." (Tr. 409).

At step four, the ALJ found that Plaintiff could perform past relevant work as a sandwich maker and industrial cleaner because this work did "not require the performance of work-related activities precluded by" Plaintiff's RFC. (Tr. 413). Although the ALJ ascertained that Plaintiff was capable of performing past relevant work, the ALJ noted that there were also other jobs existing in significant numbers in the national economy that Plaintiff could perform, including kitchen helper and laboratory equipment cleaner. (Tr. 414). Consequently, the ALJ did not proceed to the fifth and final step but, rather, concluded that Plaintiff had not been under a disability from December 30, 2008 through June 6, 2017, the date of the ALJ's decision. (Tr. 415); *see* 20 C.F.R. § 404.1520(a)(4)(iv) (stating that if the claimant can still do his past relevant work, the ALJ will find that he is not disabled).

## III. ANALYIS

Plaintiff asserts that the ALJ's denial of his application for Social Security Benefits and Supplemental Security Income (SSI) was not supported by substantial evidence and asks that the ALJ's decision be reversed for an award of benefits. (Doc. 10 at 12, 24–25). Specifically, Plaintiff argues that: (1) the ALJ erred by failing to discuss whether Plaintiff's mental impairments satisfy the paragraph "C" criteria for Listing 12.03; (2) the ALJ improperly evaluated the medical opinion evidence; (3) the ALJ improperly evaluated statements from other sources; and (4) the ALJ failed to properly consider all the record evidence. (*See* Doc. 10). However, for the reasons set forth below, the final decision of the Commissioner is affirmed.

### A.      Whether the ALJ Erred in Determining that Plaintiff's Mental Impairment Did Not Satisfy the Paragraph "C" Criteria for Listing 12.03

Plaintiff argues that the ALJ erred by failing to discuss and make findings as to the Paragraph "C" criteria for Listing 12.03 at step three of the sequential evaluation process. (*Id.* at 21). In this step, the ALJ considers whether a claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). The impairments included in the Listings are

considered "severe enough to prevent an individual from doing *any* gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a) (emphasis added). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Likewise, to show that an unlisted impairment is "equivalent" to a listed impairment, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* at 531 (citation omitted). When analyzing a claimant's mental impairments, including psychotic disorders, "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03.

Here, the ALJ determined that Plaintiff's mental impairments did not meet Listings 12.03 (Schizophrenic, Paranoid, and Other Psychotic Disorders, 12.04 (Depressive Disorders), or 12.06 (Anxiety Related Disorders) because Plaintiff did not meet the requisite "B" or "C" criteria. (Tr. 401–02). The ALJ first determined that Plaintiff did not meet the criteria for each of the listings under Paragraph B. (Tr. 401–02).[4] Then, the ALJ turned to Paragraph C. (Tr. 402). Paragraph C of Listing 12.03 requires:

> Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>  (1) Repeated episodes of decompensation, each of extended duration; or
>  (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

---

[4] After finding that Plaintiff did not meet the Paragraph B requirements, there was no need for the ALJ to review the impairments under Paragraph A. *See Stevens v. Colvin*, No. 13-CV-02830-NJV, 2014 WL 7004813, at *4 (N.D. Cal. Dec. 10, 2014); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03 ("The required level of severity for these disorders is met when the requirements in *both* A *and* B are satisfied, or when the requirements in C are satisfied.") (emphasis added). Plaintiff does not challenge the ALJ's findings as to the Paragraph B criteria. (*See* Doc. 10).

(3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03(C).

Although Plaintiff claims that the ALJ failed to discuss Listing 12.03(C), (Doc. 10 at 21), the ALJ explicitly stated that she "considered whether the 'paragraph C' criteria are satisfied[,]" but determined that "the evidence fails to establish the presence of the 'paragraph C' criteria." (Tr. 402). Further, while Plaintiff asserts that the ALJ should have discussed the Paragraph C criteria in more detail, the ALJ was not required to do so. Although an ALJ is required to adequately explain the basis for his or her determination that an applicant's impairments do not equal a listing, *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990), an ALJ is not required to "state why a claimant failed to satisfy every different section of the listing impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). Rather, "a well-developed discussion of the factual basis of a claimant's impairments elsewhere in a hearing decision may, under certain circumstances, support an unexplained finding of no medical equivalence at step three." *Lilly v. Astrue*, No. ED-CV 12-00381-MLG, 2012 WL 4364267, at *2 (C.D. Cal. Sept. 24, 2012) (finding that the ALJ's detailed review of the plaintiff's medical evidence supported the ALJ's step three finding and that the ALJ "did not err in failing to explain his finding that the [p]laintiff's impairments were not medically equivalent to any listed impairments") (citing *Gonzalez*, 914 F.2d at 1201) (finding an ALJ's four-page summary of the record an adequate basis for the ALJ's unexplained statement that the plaintiff's impairments did not meet or equal any listing); *see also Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) ("There is no error when an ALJ fails to explain why an impairment does not [meet or] equal one of the listed impairments as long as the overall conclusion is supported by the record.").

In addition to devoting nearly two pages of her decision to a thorough discussion of the Listing analysis and the Paragraph B criteria, (*see* Tr. 401–02), the ALJ engaged in a

detailed discussion of the medical evidence and Plaintiff's impairments elsewhere in the hearing decision, (*see* Tr. 402–13). The ALJ's well-developed discussion of the factual basis of Plaintiff's impairments demonstrates that the Paragraph C criteria are not met. Indeed, the evidence does not show that Plaintiff's impairments have "caused more than a minimal limitation of ability to do basic work activities"—a necessary element required to meet the Paragraph C criteria of Listing 12.03—because Plaintiff has consistently worked at Subway for at least five and a half years. (Tr. 406). Moreover, "there is no evidence of signs or symptoms of psychosis in the record during the relevant time period[,]" Plaintiff "has never been hospitalized and treated for mental illness[,]" and Plaintiff lives independently from his parents in an apartment. (Tr. 409). Substantial evidence of record supports the ALJ's finding that the Paragraph C criteria are not met.

Moreover, as the party claiming error, Plaintiff has the burden "to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Here, Plaintiff has not met his burden of proving that he can meet all of Listing 12.03's criteria. Accordingly, the Court finds that the ALJ did not err in determining that Plaintiff's mental impairments did not satisfy the Paragraph C criteria for Listing 12.03.

### B.     Whether the ALJ Improperly Evaluated the Medical Opinion Evidence

Plaintiff contends that the ALJ failed to reasonably evaluate the medical opinion evidence. (Doc. 10 at 12). Specifically, Plaintiff argues that the ALJ improperly rejected the treating and examining source opinions of Drs. Graff, Dy, and Novie, erroneously discounted portions of the examining source opinion of Dr. Krabbenhoft, and inappropriately assigned great and partial weight to the opinions of State agency Drs. Campbell and Lindsay, respectively. (*Id.* at 12–18).

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). ALJs generally give more weight to medical opinions from treating physicians "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, the opinion of a treating source is generally given more weight than the opinion of a doctor who does not treat the claimant. *Lester*, 81 F.3d at 830. Should the ALJ decide not to give the treating physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray*, 554 F.3d at 1228 (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson*, 359 F.3d at 1195. Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted).[5] Nevertheless, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and

---

[5] As the Commissioner points out, (Doc. 11 at 7), the opinions of Drs. Graff, Dy, and Novie were contradicted by those of Drs. Collier, Krabbenhoft, Campbell, and Lindsay. (*See* Tr. 409–12).

inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Moreover, "[o]pinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *see also Andrews*, 53 F.3d at 1041 ("[W]hen it is an examining physician's opinion that the ALJ has rejected in reliance on the testimony of a nonexamining advisor, reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

### 1.    The Opinion of Dr. Graff

When evaluating Plaintiff's impairments, the ALJ afforded no weight to the opinion of Sandra Graff, Ed. D., a consultative examiner whose opinion was contradicted by that of Dr. Novie. (Tr. 409). Although Plaintiff contends that the ALJ erred by rejecting Dr. Graff's report and opinion, (Doc. 10 at 12–13), the Court finds that the ALJ provided "specific and legitimate reasons that are supported by substantial evidence" for assigning no weight to the opinion of Dr. Graff. *Ryan*, 528 F.3d at 1198.

First, the ALJ specified that she did not give any weight to Dr. Graff's opinion because Dr. Graff examined Plaintiff in January 2002. (Tr. 409). As Plaintiff alleged disability beginning December 30, 2008, Dr. Graff's consultative evaluation was performed more than six years outside of the period at issue. "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (citing *Fair v. Bowen*, 749 F.2d 597, 600 (9th Cir. 1985)). Accordingly, the ALJ did not err in giving no weight to Dr. Graff's opinion because Dr. Graff evaluated Plaintiff prior to his alleged onset date.

Second, the ALJ noted that Dr. Graff's opinion that Plaintiff exhibited variable persistence conflicted with Dr. Novie's examination findings from December 22, 2011 that Plaintiff had good persistence and frustration tolerance. (Tr. 409). Inconsistency between a physician's opinion and other clinical findings is an appropriate factor to consider when

evaluating medical opinions. SSR 06-03P, 2006 WL 2329939, at * 4 (S.S.A. Aug. 9, 2006); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the ALJ reasonably discounted the physician's opinion because the medical records were inconsistent with the limitations the physician set forth in her opinion); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion."). As Dr. Graff's opinion contained limitations inconsistent with an examination from the relevant time frame, the ALJ reasonably discounted Dr. Graff's opinion for this reason, as well.[6] Accordingly, the Court finds that the ALJ reasonably determined that Dr. Graff's opinion was entitled to no weight and provided two specific and legitimate reasons for her assessment. (*See* Tr. 409–10).[7]

### 2.      Dr. Dy

Plaintiff argues that the ALJ erred in assigning no weight to the opinion of Dr. Sylvia Dy, one of Plaintiff's treating physicians. (Doc. 10 at 14). Dr. Dy's opinion, in its entirety, states: "I am recommending that Michael Ienco work no more than 25 hours per week. If you have any questions, please call Mr. Ienco's Clinical Liason, Jenny [] at []." (Tr. 348). The ALJ rejected this statement because it "is not supported by any evidence, clinical notes, or rationale[.]" (Tr. 411). Particularly, the ALJ noted that Plaintiff's medical records from 2008 to 2010 demonstrate that Plaintiff's condition was "much improved and stable," whereas records from 2012 through 2017 indicate that Plaintiff's "limitations have not increased over time." (Tr. 411–12). Further, the ALJ pointed out that Dr. Dy "did not

---

[6] Although Plaintiff claims that Dr. Graff's opinion "supports the more severe limitations recommended by Drs. Dy and Novie," (Doc. 10 at 13; *see also* Doc. 12 at 7), it remains that Dr. Graff's opinion was formed more than six years prior to Plaintiff's alleged onset date of December 30, 2008, (*see* Tr. 409). In addition to being "of limited relevance[,]" *Carmickle*, 533 F.3d at 1165, an opinion resulting from an evaluation prior to Plaintiff's alleged onset date is "neither significant nor probative," *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

[7] In its decision remanding to the ALJ to reconsider Plaintiff's eligibility for disability benefits, the Ninth Circuit found that ALJ Tucevich erred by giving "no reasons for rejecting the opinion of Dr. Graff[.]" *Ienco*, 627 Fed. App'x at 669. However, by providing two specific and legitimate reasons for rejecting Dr. Graff's opinion, ALJ Waters rectified the error from ALJ Tucevich's previous decision.

- 13 -

provide any explanation regarding her recommendation [that] the claimant work no more than 25 hours per week." (Tr. 411). Not only did Plaintiff indicate at a May 20, 2009 visit with Dr. Dy that he was looking for full time work, (Tr. 253), but the objective medical findings indicate that Plaintiff was stable on his medications, symptom free, and had mostly unremarkable mental status examinations during the relevant period. (Tr. 247, 251, 254, 1461). When evaluating conflicting medical opinions, "an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). Therefore, the ALJ did not err in discounting Dr. Dy's conclusory, two-sentence opinion as it is inadequately supported by the medical evidence.

In explaining her rationale for discounting Dr. Dy's opinion, the ALJ also noted that Plaintiff "has been described as asymptomatic," has "successfully worked for years on a part time basis, and has maintained an active lifestyle outside of work." (Tr. 411). Indeed, the record shows that Plaintiff may have even exceeded Dr. Dy's 25-hour work limit, as he reported in January 2014 that he was working 26 to 30 hours per week. (Tr. 1482).[8] In addition to working part-time at Subway for many years, Plaintiff hangs out with his friends, engages in live action role-playing, goes to concerts, bowls, listens to music, gets around town on the bus, visits art museums, and lives independently in his own apartment. (Tr. 408, 411–12). Moreover, Plaintiff's medical records from 2012 though 2017 demonstrate that Plaintiff "has become more independent and able to perform work activities." (Tr. 411–12). Significantly, an ALJ may discount opinion evidence when a physician assesses limitations that appear to be inconsistent with the claimant's level of activity. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Morgan*, 169 F.3d at 600–02 (considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion). Here, the ALJ reasonably determined that Plaintiff's ability to

_____

[8] Other treatment records also reflect that Plaintiff may have exceeded Dr. Dy's 25-hour limitation. (*See* Tr. 1240 (indicating that Plaintiff "works 22 to 27 hours a week at Subway" and works "between 4-5 days a week, between 4-8 hours each day.")).

perform such a wide-range of daily activities in addition to working part-time undercut Dr. Dy's opinion that Plaintiff should work no more than 25 hours per week. (Tr. 411–12). For these reasons, the Court finds that the ALJ did not err in affording no weight to Dr. Dy's opinion.[9]

In accordance with the Ninth Circuit's directive that the ALJ "make findings regarding Ienco's ability to work in excess of 25 hours per week[,]" *Ienco*, 627 Fed. App'x at 669, the ALJ noted that Plaintiff had never been hospitalized for treatment, there was no evidence of worsening symptoms, Plaintiff maintained a very active lifestyle with good mental health, and Plaintiff previously worked full time in the past for extended periods without any documented decompensation or increased limitations during those periods. (Tr. 412–13). Based on these findings, the ALJ found it "very difficult to avoid the conclusion that [Plaintiff] has no restriction in his ability to work full time other than a preference not to do so." (Tr. 413).[10] Ultimately, the ALJ determined that she was unable to assign more than minimal weight to Dr. Dy's opinion for these reasons. As substantial evidence supports the ALJ's assessment of Dr. Dy's opinion, the Court upholds the ALJ's

---

[9] The Ninth Circuit previously stated that the ALJ failed to give "specific and legitimate reasons" for discounting Dr. Dy's opinion limiting Plaintiff to 25 hours per week. *Ienco*, 627 Fed. App'x at 669. According to the Ninth Circuit, the prior ALJ erred by rejecting Dr. Dy's opinion because Dr. Dy "appear[ed] to have adopted the claimant's subjective allegations and presented them as her own, which diminishes her overall credibility." *Id.* Here, the ALJ heeded the Ninth Circuit's remand order by providing different reasons for discounting Dr. Dy's recommendation, all of which are "specific and legitimate." (Tr. 411).

[10] Plaintiff argues that the ALJ's finding that it is "very difficult to avoid the conclusion that [Plaintiff] has no restriction in his ability to work full time other than a preference not to do so[,]" (Tr. 413), is not supported by substantial evidence and is speculative, (Doc. 10 at 20). The Court disagrees. In her decision finding non-disability, the ALJ sets out in detail why she believes Plaintiff is capable of working a full-time job. (*See* Tr. 412–13). Additionally, ALJs are permitted to make reasonable inferences from evidence in the record. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the[administrative] law judge is entitled to draw inferences logically flowing from the evidence."). Here, it was reasonable for the ALJ to infer that Plaintiff was capable of working full-time based upon the facts that he had worked full time in the past for extended periods without any documented decompensation or increased limitations during those periods, continued to work part time while maintaining a very active lifestyle with good mental health, and failed to present any evidence of worsening symptoms. (Tr. 412–13).

analysis.[11]

### 3. Dr. Novie

Next, Plaintiff claims that the ALJ erred in giving little weight to Dr. Novie's examining source opinions. (Doc. 10 at 15). After examining Plaintiff once in 2010 and once in 2015, Dr. Novie opined that Plaintiff could not work more than 25 hours per week. (Tr. 410). However, the ALJ provided multiple reasons, each supported by substantial evidence, for giving Dr. Novie's opinion little weight. (Tr. 410–11).

First, the ALJ noted that Dr. Novie's conclusion that Plaintiff was "limited in social ability and ability to adapt" was contradicted by Dr. Novie's own clinical findings that Plaintiff's schizoaffective disorder was "mild" and that Plaintiff's level of psychosocial stressors were "mild." (Tr. 410). Moreover, Dr. Novie found that Plaintiff "had good persistence and frustration tolerance," and that his attention, concentration, and processing speed were "within average ranges." (*Id.*). According to the ALJ, Dr. Novie's "early conclusions about the claimant's limitations were greatly exaggerated and seem to contradict what the doctor himself has recorded about the claimant's behavior and demeanor." (Tr. 411). Contradictions between a physician's opinion and objective medical findings constitute a "specific and legitimate reason" for rejecting the opinion. *See Valentine*, 574 F.3d at 692–93 (holding that the ALJ sufficiently justified its rejection of a treating psychologist's contradicted testimony because it conflicted with the psychologist's own treatment notes); *Tommasetti*, 533 F.3d at 1041. Consequently, the ALJ reasonably determined that Dr. Novie's objective medical findings did not support his opinion limiting Plaintiff to a 25-hour work week.

Second, the ALJ discounted Dr. Novie's opinion because his finding that Plaintiff had social limitations contradicted the overall record, including Plaintiff's work record indicating that he has sustained employment for many years, and testimony demonstrating

---

[11] Although Plaintiff may interpret the evidence differently and prefer that the ALJ include a restriction to 25 hours in the RFC finding as set forth in Dr. Dy's opinion, this does not establish error. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Andrews*, 53 F.3d at 1039–40).

that "he has worked in jobs having contact with the public, and can adjust to co-workers and work situations." (Tr. 410). Because inconsistency between a physician's findings and other evidence in the record is an appropriate factor to consider when evaluating medical opinions, 20 C.F.R. § 404.1527(c)(4); SSR 06-03P, 2006 WL 2329939, at * 4, the ALJ reasonably discounted Dr. Novie's opinion for overstating Plaintiff's functional limitations.

Third, the ALJ noted that Plaintiff's daily activities—including his abilities to sustain employment, get ready for work, get to work on time, live on his own, manage his own medication, take the bus to work, prepare meals, hang out with friends, and play video games—undermined Dr. Novie's assessment of Plaintiff's functional limitations. (Tr. 410–11). As an ALJ may discount opinion evidence when a physician assesses limitations inconsistent with the claimant's level of activity, *Rollins*, 261 F.3d at 856; *Morgan*, 169 F.3d at 600–02, the ALJ reasonably determined that Plaintiff's ability to perform such a wide-range of daily activities undercut Dr. Novie's opinion that Plaintiff could work no more than 25 hours per week. (Tr. 410–11).

Finally, the ALJ reasoned that the only reason given for Dr. Novie's opinion that Plaintiff cannot work over 25 hours per week is that Dr. Novie fears Plaintiff might have a "psychotic break," but yet "does not give any evidence to support this fear." (Tr. 411). In fact, the ALJ reasoned that there was no evidence that Plaintiff had ever been hospitalized for mental health treatment, experienced episodes of decompensation, or become "more limited in his abilities to perform work activities and to socialize" because of his jobs. (*Id.*). Moreover, the ALJ indicated that Plaintiff previously worked over 25 hours per week for extended periods but yet none of Plaintiff's treatment records showed any decompensation or increased limitations during those periods. (Tr. 412). Plaintiff challenges the ALJ's reasoning regarding the lack of evidence substantiating Dr. Novie's fears of a psychotic break, arguing that there is no requirement that a claimant "have a breakdown in order to justify a doctor's cautionary opinion." (Doc. 10 at 16). Nevertheless, the Court agrees with the Commissioner that this argument "misses the mark," (Doc. 11 at 14), as an ALJ "need

not accept the opinion of a doctor if that opinion is . . . inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Tonapetyan*, 242 F.3d at 1149). For these reasons, the ALJ reasonably determined that no objective evidence supported Dr. Novie's opinion that Plaintiff work 25 hours or less per week to avoid a psychotic break.

### 4.    Dr. Krabbenhoft

The ALJ gave great weight to Dr. Krabbenhoft's opinion that Plaintiff can carry out simple instructions, but discounted the remainder of Dr. Krabbenhoft's opinions. (Tr. 410). Plaintiff does not contest the portion of Dr. Krabbenhoft's opinion noting that Plaintiff can carry out simple tasks. (*See* Doc. 10 at 16–17; Doc. 12 at 9). Although Dr. Krabbenhoft rendered her opinion after interviewing Plaintiff and reviewing records spanning from 2010 through 2012, (Tr. 1905), Plaintiff contends that the ALJ erroneously discounted the remainder of Dr. Krabbenhoft's opinions because Dr. Krabbenhoft did not review the opinions of Drs. Dy, Novie, or Graff limiting Plaintiff's work week to 25 hours. (Doc. 10 at 16). Plaintiff bases this argument on the disclaimer set forth in Dr. Krabbenhoft's opinion, which states: "This diagnosis is based on a one-session interview with claimant. If additional information comes available for review, my opinion may change." (Doc. 10 at 16 (citing Tr. 1907)). Based on this disclaimer, Plaintiff speculates that Dr. Krabbenhoft may have reached a different conclusion had she reviewed the recommendations that Plaintiff work for no more than 25 hours per week. (*Id.* at 17). Nevertheless, the Court agrees with the Commissioner that "[m]erely speculating that a physician's opinion might change based on other evidence in the record does not demonstrate that the ALJ erred[.]" (Doc. 11 at 16).

Here, the ALJ discounted the remainder of Dr. Krabbenhoft's opinions—including that Plaintiff was "at risk for social hazards" and was "[e]xpected to struggle with remembering changes to routine"—because they were unclear, unpersuasive, and did "not provide a basis for finding the claimant any more limited than the RFC prescribed."

(Tr. 410, 1909).[12] Just as the ALJ noted when discussing Dr. Novie's finding that Plaintiff had some social limitations, Plaintiff has consistently "worked in jobs having contact with the public, and he can adjust to co-workers and work situations." (Tr. 410). Despite Plaintiff's social limitations, the ALJ also points out that Plaintiff held his job at Subway for the past six years, and that he reported that he had friends with whom he played magic games and went to the movies, as well as friends at work. (*Id.*). As there is inconsistency between Dr. Krabbenhoft's opinion that Plaintiff was "at risk for social hazards" and other evidence in the record, the ALJ did not err in discounting Dr. Krabbenhoft's remaining opinions. *See Green v. Berryhill*, 731 F. App'x 596, 599 (9th Cir. 2018) (holding that inconsistency between a physician's opinion and other evidence in the case record constituted a specific and legitimate reason to reject physician's opinion).

### 5. Drs. Campbell and Lindsay

Plaintiff also claims that the ALJ erred in her assessment of the opinions of Drs. Campbell and Lindsay, two State agency physicians. (Doc. 10 at 17). The ALJ discounted the portions of these opinions suggesting that Plaintiff work in an environment that does not require good social skills and which has more than typical levels of supervision because they contradicted the evidence of Plaintiff's work activity demonstrating that Plaintiff has worked at a job interacting with the public for many years, and has even helped to train others. (Tr. 409, 547, 558, 569, 583). As an ALJ may discount opinion evidence when a physician assesses limitations inconsistent with the claimant's level of activity, *Rollins*, 261 F.3d at 856; *Morgan*, 169 F.3d at 600–02, the ALJ did not err in discounting portions of the opinions of Dr. Campbell and Dr. Lindsay on this basis.

Nevertheless, Plaintiff suggests that his ability to interact with others in a work setting cannot serve as a basis for discounting these opinions because his past work was part time rather than substantial gainful activity (SGA). (*See* Doc. 10 at 18). Plaintiff's argument fails for two reasons, however. First, part-time work can qualify as substantial

---

[12] The Commissioner mentions that although the ALJ gave little weight to Dr. Krabbenhoft's opinion that Plaintiff might struggle to remember changes to his routine, she accounted for this observation "by including a limitation in Plaintiff's RFC restricting him to few changes in the work setting." (Doc. 11 at 16 (citing Tr. 402, 1909)).

gainful activity. *Katz v. Sec'y of Health & Human Servs.*, 972 F.2d 290, 292 (9th Cir. 1992) (citing 20 C.F.R. § 404.1572(a) ("Your work may be substantial even if it is done on a part-time basis[.]")).[13] Second, the Social Security Regulations provide that *any* work a claimant has done during any period in which they allege they are disabled is relevant to determining whether an individual can engage in substantial gainful activity. *See* 20 C.F.R. §§ 404.1571, 416.971 ("The work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level. If you are able to engage in substantial gainful activity, we will find that you are not disabled. . . . *Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did*.") (emphasis added). Accordingly, the ALJ did not err in using Plaintiff's past work activity to discount these portions of the opinions of Drs. Campbell and Lindsay.

Plaintiff also contends that the ALJ erred in weighing Dr. Campbell's opinion because the "ALJ must base her decision on medical opinion, not amend the opinion to fit her own conclusion." (Doc. 10 at 17). While it is true that an ALJ may not substitute her own medical judgment for that of a medical expert,[14] Plaintiff provides no evidence that this was the case here. Therefore, the Court is unable to find that the ALJ erred on this basis.

Plaintiff finally argues that the ALJ erred in weighing the opinions of Drs. Campbell and Lindsay because she gave great weight to Dr. Campbell's opinion that Plaintiff could perform work consisting of simple tasks, but only gave partial weight to Dr. Lindsay's same opinion. (Doc. 10 at 17). While it is true that the ALJ inexplicably gave more weight to Dr. Campbell's opinion than to that of Dr. Lindsay, Plaintiff has not demonstrated how

---

[13] The ALJ found that Plaintiff has not engaged in substantial gainful activity since December 30, 2008. (Tr. 400). However, this does not discount Plaintiff's solid work history, as Plaintiff claims. (Doc. 10 at 18).

[14] *See Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999) (An ALJ may not substitute his own interpretation of the medical evidence for the opinion of medical professionals); *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to make his own independent medical findings.") (internal marks, alterations and citations omitted).

the ALJ's disparate analysis of these opinions affected the outcome in this case.[15] Indeed, the Court finds that this error is harmless, as it "is inconsequential to the ultimate non-disability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Regardless if the ALJ gave great weight or partial weight to the opinions of both Dr. Campbell and Dr. Lindsay that Plaintiff could perform work consisting of simple tasks, the ALJ would have still found that Plaintiff was not disabled. Substantial evidence supports the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion." *Id.* (citations omitted). The Court will not reverse the Commissioner's decision for an error that is harmless. *Burch*, 400 F.3d at 679.

### C.    Whether the ALJ Improperly Evaluated Statements from "Other Sources"

Plaintiff contends that the ALJ improperly evaluated the statements provided by a career counselor, by Plaintiff's mother, and by Plaintiff's manager at Subway. (Doc. 10 at 18, 22). When an ALJ discounts the testimony of lay witnesses, "he [or she] must give reasons that are germane to each witness." *Valentine*, 574 F.3d at 694; *Molina*, 674 F.3d at 1111.

#### 1.    Thomas Ross, the Career Counselor

Thomas Ross, a career counselor, opined that Plaintiff "should not have a full time job or a job that is too stressful." (Tr. 412, 1115). The ALJ gave this statement minimal weight because Mr. Ross failed to "cite any medical or treatment records to support his statement" nor provide any "support for the limitations he specifies." (Tr. 412). Further, the ALJ discounted Mr. Ross's statement because he failed to "define stress or what he considers a full time job." (*Id.*). Finally, the ALJ pointed out that the portion of Mr. Ross's statement that Plaintiff "has been in recovery for a little over two years," (Tr. 1115), is unclear, and that Mr. Ross fails to explain his motivation for making the statement.

---

[15] *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he party that 'seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted.'") (quoting *Palmer v. Hoffman*, 318 U.S. 109, 116 (1943)); *Brown v. Comm'r of Soc. Sec.*, 532 F. App'x 688, 689 (9th Cir. 2013) (affirming the Commissioner's decision because the plaintiff "failed to carry her burden to show that [an] error was harmful.") (citing *Shinseki*, 556 U.S. at 409; *Molina*, 674 F.3d at 1115–22)).

(Tr. 412). As the ALJ listed germane reasons for discounting Mr. Ross's statement, *Valentine*, 574 F.3d at 694, the Court is unable to find that the ALJ erred in rejecting his statement.

## 2. Mary Ann Ienco, Plaintiff's Mother

The ALJ also considered the two third party statements and hearing testimony of Mary Ann Ienco, Plaintiff's mother, and found that "her description of the claimant's behavior requires no greater limitations than those given in the RFC." (Tr. 413). Although Plaintiff contends that Mary Ann Ienco's "testimony of a dangerous lack of social skills, impulsiveness, etc., is clearly not covered by the cursory statement of the ALJ that her testimony is contained within the RFC adopted," the Court disagrees. (Doc. 10 at 22). First, Mary Ann Ienco never testified that her son has a "dangerous lack of social skills," as Plaintiff claims. In fact, she states that Plaintiff "has some friends" but "not a lot of friends," and has a couple of "good friends." (Tr. 477). When asked by the ALJ if she had any concerns about his safety, Mary Ann Ienco replied that she did because Plaintiff is "more naïve I think than most people." (Tr. 478). However, just because Mary Ann Ienco believes her son is naïve and "very trusting" does not demonstrate that Plaintiff has a "dangerous lack of social skills." (*Id.*).

Second, while the ALJ may not have given specific reasons for rejecting Mary Ann Ienco's lay witness testimony, Plaintiff has not met his burden of showing that this error was harmful. *See Shinseki*, 556 U.S. at 409; *Brown*, 532 F. App'x at 689. As the Commissioner points out, "the ALJ properly discounted similar statements about Plaintiff's social limitations and determined that they were inconsistent with Plaintiff's long history of interacting with coworkers, supervisors, and the public at his part-time job." (Doc. 11 at 19 (citing Tr. 409)). Veritably, the ALJ's error was harmless because the ALJ validly rejected the social limitations described by Mary Ann Ienco when discussing the physician opinion evidence. (*See* Tr. 409–10); *Molina*, 674 F.3d at 1122 ("Because the ALJ had validly rejected all the limitations described by the lay witnesses in discussing Molina's testimony, we are confident that the ALJ's failure to give specific witness-by-witness

reasons for rejecting the lay testimony did not alter the ultimate nondisability determination. Accordingly, the ALJ's error was harmless."). Therefore, the Court will not reverse on this basis. *Burch*, 400 F.3d at 679.

### 3. Ryan Briggs, Plaintiff's Manager at Subway

Plaintiff contends that the ALJ erred by omitting the statement made by Ryan Briggs, Plaintiff's manager at Subway for over 5 and a half years. (Doc. 10 at 22). Mr. Briggs stated that Plaintiff is "on a 20-hour schedule because when he works longer than that he becomes easily agitated, confused, and stressed out." (Tr. 241). Mr. Briggs also indicated that Subway "would not hire him full time due to his mental health condition." (*Id.*). Here, the ALJ erred by failing to consider and comment upon Mr. Briggs' lay witness testimony. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). According to Plaintiff, this error was harmful because "[t]he statement of Plaintiff's decompensating with longer hours by an employer with a long familiarity, and his statement that Plaintiff would not be hired full time[,] adds a vocational and real life opinion to the case and is crucial evidence." (Doc. 10 at 22).

Conceding that the ALJ erred by silently disregarding Mr. Briggs' lay testimony, the Commissioner avers that the ALJ's error was harmless. The Court agrees, as the Court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. First, Mr. Briggs' statement that Plaintiff's work week is limited to 20 hours appears to be untrue, as Plaintiff testified that he occasionally worked 24 to 25 hours per week, (Tr. 459), and reported to medical professionals that he was working over 20 hours. (Tr. 1482 (indicating that Plaintiff was working 26 to 30 hours per week); Tr. 1240 (indicating that Plaintiff "works 22 to 27 hours a week at Subway" and works "between 4-5 days a week, between 4-8 hours each day.")). Furthermore, Mr. Briggs provides no examples of situations where

Plaintiff allegedly became "agitated, confused, and stressed out" from working more than 20 hours per week; rather, Mr. Briggs' sweeping statement is devoid of evidence.

Moreover, Mr. Briggs' statement is duplicative of the opinion evidence indicating that Plaintiff should work no more than 25 hours, which the ALJ reasonably discounted. (Tr. 410–13). An ALJ's error in failing to consider lay witness testimony is harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *Molina*, 674 F.3d at 1119. Further, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Molina*, 674 F.3d at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Here, the reasons and evidence which the ALJ set forth for assigning no more than minimal weight to the opinions that Plaintiff should work no more than 25 hours per week "apply equally well" to the letter submitted by Mr. Briggs. *Id.* at 1117. The ALJ noted that there was no evidence that Plaintiff had ever been hospitalized for mental health treatment, experienced episodes of decompensation, or become "more limited in his abilities to perform work activities and to socialize" because of work. (Tr. 411). Moreover, the ALJ indicated that Plaintiff previously worked over 25 hours per week for extended periods, but yet none of Plaintiff's treatment records showed any decompensation or increased limitations during those periods. (Tr. 412). These facts contradict Mr. Briggs' letter just as they contradict the opinions of Drs. Novie and Dy. (Tr. 410–13). Therefore, because the ALJ properly discounted the opinions of Dr. Dy and Dr. Novie that Plaintiff be capped at 25 hours per week, and because those opinions describe essentially the same limitations claimed by Mr. Briggs, the ALJ's failure to comment on Mr. Brigg's statement is harmless error. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 893 (9th Cir. 2006) (finding that the ALJ's failure to consider a lay witness' testimony was harmless because that lay witness "spoke to no limitations not already accounted for by the ALJ.").

Furthermore, even if Mr. Briggs' statement is credited, substantial evidence

supports the ALJ's non-disability determination. *See Graham v. Comm'r of Social Sec.*, 441 Fed. App'x. 487, 489 (9th Cir. 2011) (finding that the ALJ's failure to comment upon lay witness testimony was harmless because even if it were fully credited, "there was other significant evidence that supported the ALJ's nondisability determination"). Plaintiff's ability to perform a wide range of daily activities and work part-time without experiencing any negative change in his mental capabilities nor any episodes of decompensation demonstrates that Plaintiff has no restriction in his ability to work full time other than a preference not to do so. (Tr. 411–13). Mr. Briggs' lay witness testimony, when viewed in conjunction with the evidence the ALJ properly considered, does not undermine the ALJ's finding that Plaintiff is not disabled. Accordingly, the ALJ's failure to comment properly on the lay testimony is harmless error, as the ALJ would not have changed her RFC determination based upon Mr. Briggs' statement.

### D. Whether the ALJ Failed to Properly Consider All the Record Evidence

Plaintiff contends that the ALJ failed to properly consider all of the record evidence, including Plaintiff's driving record, GAF scores, a "seriously mentally ill" (SMI) finding by the Arizona Department of Health Services, and medical records documenting negative symptoms. (Doc. 10 at 18–21). For the reasons set forth below, however, the Court finds that the ALJ properly weighed this evidence.

First, Plaintiff claims that the ALJ erred by giving no weight to Plaintiff's driving record from 1994. (Doc. 10 at 18–19). According to Plaintiff, this record "is evidence of a life long dysfunction and supports the opinions of Drs. Dy and Novie," who reported that Plaintiff had "a dozen car accidents over the years[.]" (*Id.* at 19). Nevertheless, the ALJ discussed Plaintiff's remote driver's training records in her opinion, and reasonably determined that they were of limited relevance to the disability determination because they "concern a matter that was completed in 1994 which is more than ten years before the period in issue." (Tr. 412). As this evidence predating the alleged onset of disability by fourteen years is of limited relevance, *Carmickle*, 533 F.3d at 1165 (citing *Fair*, 749 F.2d at 600), the ALJ did not err in discounting Plaintiff's driving record. Moreover, Plaintiff

has failed to demonstrate that this evidence undermines the ALJ's non-disability finding, and even concedes that the ALJ's rejection of this record "is not a major issue." (Doc. 10 at 18).

Second, Plaintiff argues that the ALJ erred in assigning minimal weight to his global assessment of functioning (GAF) scores. (Doc. 10 at 19). In doing so, the ALJ noted that "GAF scores only reflect the claimant's functioning during a very limited and isolated period of time" and "do not reflect the claimant's limitations over a long period of time." (Tr. 412). Plaintiff argues that the ALJ's reasoning for discrediting the GAF scores is "flawed" because GAF scores "were accepted by the medical community and entered by Plaintiff's treating providers." (Doc. 10 at 19).[16] Nevertheless, the Social Security Administration has determined that the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings." *McFarland v. Astrue*, 288 F. App'x 357, 359 (9th Cir. 2008) (citing 65 Fed. Reg. 50, 746, 50, 765 (Aug. 21, 2000)). Moreover, "an ALJ is not required to give controlling weight to a treating physician's GAF score; indeed, an ALJ's failure to mention a GAF score does not render his assessment of a claimant's RFC deficient." *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009) (citations omitted); *see also Pinegar v. Comm'r of Soc. Sec. Admin.*, 499 F. App'x 666, 667 (9th Cir. 2012) ("Regarding [plaintiff's] Global Assessment of Functioning scores, the Commissioner has stated that such scores do not directly correlate with the requirements of Listing 12.04 for a finding of disability, and this Court has not found error when an ALJ does not consider them. . . . Therefore, the ALJ did not err by not considering [plaintiff's] Global Assessment of Functioning scores.")

---

[16] Plaintiff also urges the Court to consider *Nelson v. Berryhill* from the District of New Mexico. (Doc. 10 at 20 n.8 (citing *Nelson v. Berryhill*, No. CV 17-0516 MV/JHR, 2018 WL 2455919, at *4 (D.N.M. June 1, 2018), *report and recommendation adopted*, No. CV 17-0516 MV/JHR, 2018 WL 3209405 (D.N.M. June 29, 2018)). Not only is this case not binding precedent, but it is distinguishable because the Magistrate Judge there found that the reasons provided by the ALJ for rejecting the GAF score were unsupported. *Nelson* at *5. This is not the case here. Further, even if the Court were to find that the ALJ erred in assigning minimal weight to Plaintiff's GAF scores—which it does not—Plaintiff has not shown that this error warrants reversal because he has not satisfied his burden of establishing harm. *See Molina*, 674 F.3d at 1111 (court may not reverse unless error is harmful, and claimant has burden of showing harm).

(internal citations omitted); *Baker v. Astrue*, No. CV08-3199-MLG, 2009 WL 279085, at *3–4 (C.D. Cal. Feb. 4, 2009) (holding that the ALJ did not err in failing to mention the claimant's GAF scores because while "a GAF score may help guide the ALJ's determination," an ALJ "is not bound to consider it."). Here, the ALJ considered Plaintiff's GAF scores, but reasonably determined that they were entitled to minimal weight. (Tr. 412). The ALJ did not err in doing so.

Third, Plaintiff claims that the ALJ erred in rejecting the SMI finding by the Arizona Department of Health Services. (Doc. 10 at 20–21). The ALJ acknowledged that Plaintiff "has been found eligible to receive services as a seriously mentally ill (SMI) individual in Arizona," but gave this determination "minimal weight" because the criteria to establish eligibility as a SMI are inconsistent with the criteria used to determine eligibility for disability benefits. (Tr. 413). Although Plaintiff acknowledges that the State of Arizona applies a different standard for determining eligibility for services as a SMI, Plaintiff argues that the "Ninth Circuit requires ALJs to consider the determinations of other agencies whose standards by definition are somewhat different from Social Security." (Doc. 10 at 20).[17]

Findings of disability by other state or federal agencies "do[ ] not necessarily compel the SSA to reach an identical result." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing 20 C.F.R. § 404.1504 (2002)). Disability determinations by other government agencies are not binding on the Commissioner. 20 C.F.R. §§ 404.1504,

---

[17] In support, Plaintiff erroneously attributes the following quote to *McCarty v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002): "[F]indings of disability by other federal agencies . . . are entitled to some weight and must be considered in the ALJ's decision." (*See* Doc. 10 at 21). However, this quote is from *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998), and was quoted by the Ninth Circuit in support of its proposition that "the nine circuits that have considered this issue agree that a VA disability rating is entitled to evidentiary weight in a Social Security hearing[,]" *McCarty*, 298 F.3d at 1075. The *McCarty* case deals with the question of how much weight an ALJ should give to another federal agency's finding of disability, and holds that an ALJ must *consider* the VA's finding in reaching his decision. *Id.* at 1075–76. Here, however, Plaintiff is arguing that the ALJ erred in rejecting the state of Arizona's SMI determination, even though the ALJ considered the state's finding in reaching her decision. (*See* Tr. 413). Moreover, while Plaintiff cites the Social Security regulations for support for the proposition that ALJs must evaluate and weigh every medical opinion in the record, (Doc. 10 at 21 (citing 20 C.F.R. § 416.927(c)), the ALJ here *did* evaluate this evidence and assigned it minimal weight, (Tr. 413).

416.904.[18] "A state finding of disability may be introduced into evidence before the Secretary, but the Secretary may attribute as much or as little weight to it as the Secretary deems appropriate." *Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990), *overruled in part on other grounds by Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (citing *Wilson v. Heckler*, 761 F.2d 1383, 1385 (9th Cir. 1985)). However, an ALJ is obligated to *consider* the findings of other agencies in reaching her decision. *McCartey*, 298 F.3d at 1076.[19] The weight an ALJ is required to give to these other findings of disability, however, depends on whether the agency disability program has "marked similarit[ies]" to the SSA disability program. *Id.* One important factor in this analysis is the level of similarity between the two programs' "criteria for determining disability." *Id.*

As required, the ALJ considered the State of Arizona's SMI determination in reaching her decision, and determined the criteria used by the SSA and the State of Arizona were too divergent to provide significant probative value for SSA purposes. (Tr. 413). Accordingly, the ALJ did not err in giving little weight to the SMI determination, as the "ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner." *Mowery v. Comm'r of Soc. Sec. Admin.*, No. CV-13-02325-PHX-ESW, 2015 WL 505661, at *10 (D. Ariz. Feb. 6, 2015) (holding that the ALJ did not err in assigning minimal weight to Magellan of Arizona's determination that Plaintiff has a qualifying mental illness entitling Plaintiff to SMI benefits because

---

[18] These sections of the Social Security Regulations provide:

> A decision by . . . any other governmental agency about whether you are disabled . . . is based on its rules and is not our decision about whether you are disabled . . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding on us.

20 C.F.R. §§ 404.1504, 416.904.

[19] *But see* 20 C.F.R. § 404.1504 (2017) (amending the code section to state that the SSA "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits"). Because this amendment to the Social Security Regulations applies to claims brought after March 27, 2017, it does not apply to this case.

"qualification for SMI benefits is a determination distinct to Magellan" and has "'limited probative value' as to whether Plaintiff is disabled pursuant to the Social Security Act."); *see also Bates*, 894 F.2d at 1063 ("Both the Social Security regulations and our decisions establish that the Secretary is not bound by a state agency determination of disability. The State of Washington's determination that Bates is 'temporarily totally disabled' is not binding on the Secretary. Bates' argument that the Secretary erred in failing to give weight to this determination is thus without merit."); *Little v. Richardson*, 471 F.2d 715, 716 (9th Cir. 1972) (State determination of disability was not binding in proceedings on application for Social Security disability benefits).

Finally, Plaintiff contends that the ALJ failed to properly consider medical records documenting negative symptoms, which Plaintiff believes show that he is not in good health and is unable to work full time. (Doc. 10 at 23–24). Particularly, Plaintiff takes error with the ALJ's statement that: "It is not clear why treating and examining mental health providers would recommend he work no more than 25 hours per week given how he has maintained a very active lifestyle with *apparent good mental health*." (*Id.* at 23 (citing Tr. 412–13)). Although the record admittedly contains a combination of both positive and negative objective findings, Plaintiff's reliance on these negative examination findings is misplaced.[20] "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence," *Tommasetti*, 533 F.3d at 1041, and reasonably determined that the objective findings did not support a finding of disability here, (*see* Tr. 397–415). *See also Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Moreover, even if substantial evidence supports Plaintiff's interpretation of the evidence, this does not establish error. *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key

---

[20] Plaintiff argues that the ALJ errs in relying on records showing that Plaintiff was improved, stable, and symptom free as support for her finding that Plaintiff is capable of working full-time because all of these records "were entered in the context of the 25 hour regimen." (Doc. 10 at 23). According to Plaintiff, "he is asymptomatic while he complies with Dr. Dy's and Dr. Novies' restrictions." (Doc. 12 at 5). Nevertheless, it remains that Plaintiff was also asymptomatic when working *more than* 25 hours per week. (*See* Tr. 412 ("[Plaintiff] worked full time in the past for extended time periods and treatment records do not document decompensation or increased limitations during those periods.")).

question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). As substantial evidence supports the ALJ's findings that Plaintiff can work full time, the Court will affirm.

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 20th day of March, 2019.

James A. Teilborg
Senior United States District Judge